IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARTHA H., | |
| Plaintiff, | **4:21-CV-03316** |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | **MEMORANDUM AND ORDER ON JUDICIAL REVIEW OF COMMISSIONER'S DENIAL OF BENEFITS** |
| Defendant. | |

Plaintiff Martha H.[1] seeks judicial review of the denial of her application for disability benefits by defendant Commissioner of the Social Security Administration. Filing 1. Martha H. has moved for an order reversing the Commissioner's decision. Filing 1. In response, the Commissioner filed a motion to affirm the Commissioner's final decision denying disability benefits. Filing 11. For the following reasons, the Court grants the Commissioner's motion to affirm and denies Martha H.'s motion to reverse.

## I.  INTRODUCTION

### A.  Procedural Background

Martha H. had a prior unfavorable decision made by an administrative law judge (ALJ) on November 27, 2018. Filing 12-2 at 12 (Administrative Record (AR) 11). On July 23, 2019, Martha H. filed a new claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and supplemental security income benefits under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381 *et seq.* Filing 12-2 at 12 (AR 11). Martha H. realleged a disability onset date of June 1, 2015. Filing 12-2 at 12 (AR 11). The Social Security Administration (SSA)

---

[1] The Court will refer to Plaintiff by first name and last name first initial to protect her privacy.

initially denied her claim on December 6, 2019, and subsequently her request for reconsideration on February 18, 2020. Filing 12-2 at 12 (AR 11). Martha H. then requested a review of her denial by an administrative law judge (ALJ) on May 1, 2020. Filing 12-2 at 12 (AR 11).

The ALJ held an administrative hearing on February 1, 2021. Filing 12-2 at 12 (AR 11). No new evidence originating from the period before the unfavorable decision on Martha H.'s first application was presented to the ALJ. Consequently, the ALJ addressed the period beginning on November 28, 2018, in his decision on the current claim. Filing 12-2 at 12 (AR 11). Although aware of her right to representation, Martha H. appeared and testified at this hearing without the assistance of counsel. Filing 12-2 at 12 (AR 11). The ALJ subsequently denied Martha H.'s claim on February 16, 2021. Filing 12-2 at 9-11 (AR 8-10). The Appeals Council denied Martha H.'s request for review of the ALJ's decision. Filing 12-2 at 2-8 (AR 1-7). Martha H. then filed this action with the assistance of counsel requesting this Court review and reverse the ALJ's denial of her disability benefits claim and remand with instructions to consider all the evidence in the record and to evaluate properly her credibility. Filing 1 at 2; *see also* Filing 25 at 24.

### B.  Factual Background

#### 1.  *The Claimant and Her Alleged Disabilities*

Martha H. was forty-four years old, which is defined as a younger individual (18–49 years old) under 20 C.F.R. § 404.1563 and 20 C.F.R. § 416.963 on the date following the previous ALJ's denial of her claim. Filing 12-2 at 23 (AR 22). At the time of her administrative hearing on February 1, 2021, Martha H. was forty-six years old. Martha H. is classified as having limited education under 20 C.F.R. § 404.1564 and 20 C.F.R. § 416.964. Filing 12-2 at 23 (AR 22). Martha H. lives with her only child and has not worked since before November 28, 2018. Filing 12-2 at 15, 34, 40 (AR 14, 33, 39). Martha H.'s July 23, 2019, disability report alleged that she has a learning

disability, suffers from chronic insomnia, post-traumatic stress disorder (PTSD), borderline personality disorder (BPD), and episodic alcohol dependance, and engages in episodic cannabis abuse. Filing 12-7 at 12 (AR 214).

Martha H. presents three arguments for reversing the Commissioner's denial of her claim for disability benefits. She contends that the ALJ "cherry picked" facts from the record in determining that she was only moderately limited and that her impairments did not meet the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Filing 25 at 12-21. She next argues that instead of developing the record, the ALJ erroneously relied on his own understanding of the evidence in determining that she was capable of functioning on a sustained basis. Filing 25 at 21-22. Finally, Martha H. asserts that the ALJ relied upon a vocational expert's (VE's) answer to a hypothetical question that did not encompass all of her limitations. Filing 25 at 22-24. The Court will summarize the medical records and evidence related to these challenges with only sufficient discussion of other evidence to provide necessary context.

### 2. Medical Records and Evidence

#### a. Treating Physicians' Opinions of Martha H.'s Psychological Symptoms

Prior to the period in question, which began November 28, 2018, Martha H. was diagnosed with bipolar disorder, posttraumatic stress disorder (PTSD), and borderline personality disorder after being hospitalized on May 21, 2018, for suicidal ideation due to stressors at home. Filing 13-1 at 18 (AR 291). She requested discharge, and was discharged, three days later because she was no longer suicidal. Filing 13-1 at 18 (AR 291). On June 6, 2018, Martha H. met with Amber Ramig, APRN, for a medication management meeting. Filing 13-1 at 58 (AR 331). At this meeting, Martha H. reported that she was only suffering from depressed mood and that the previous month's voluntary hospitalization was due to an interaction with a maintenance worker at Martha H.'s

3

apartment that left her upset. Filing 13-1 at 58 (AR 331). Martha H. denied that she was suicidal during the time she was hospitalized in May 2018. Filing 13-1 at 58 (AR 331). She was prescribed a series of medications, including Abilify and trazodone, to manage her psychological symptoms. Filing 13-1 at 60 (AR 333).

On August 28, 2018, Martha H. visited the office of Amber Ramig, APRN, and met with Christine Karell, APRN. Filing 13-1 at 63 (AR 336). Martha H. stated that she was easily irritable and angry, and that she had stopped taking her medications because she could not afford them. Filing 13-1 at 63 (AR 336). She desired to resume taking medication for her depression and anger and stated that she was working and wanted to maintain her employment. Filing 13-1 at 63 (AR 336). She was prescribed Prozac to combat her major depressive disorder. Filing 13-1 at 63 (AR 336).

At a follow-up appointment on October 9, 2018, with Christine Karell, APRN, Martha H. stated that she was feeling better because the Prozac was helping with her anger. Filing 13-1 at 65 (AR 338). She also relayed to Karell that she is saving the $4 required for her monthly medication. Filing 13-1 at 65 (AR 338). The psychiatric examination conducted by Karell revealed that Martha H.'s psychiatric status was normal, with normal speech, thought processes, and judgment, and that her mental status was also normal, with intact memory, normal attention, and displaying a euthymic mood. Filing 13-1 at 65 (AR 338). Further, the examination revealed that Martha H. was not suffering from any thought disorders, hallucinations, or suicidal ideation. Filing 13-1 at 65 (AR 338).

On February 27, 2019, Martha H. was seen again by Christine Karell, APRN. Filing 13-1 at 67-69 (AR 340-42). This is the first new medical record considered by the ALJ in making his determination in Martha H.'s case. Filing 12-2 at 12 (AR 11). Martha H. reported that her mood

was up and down and that she was easily angered. Filing 13-1 at 67 (AR 340). Karell's psychiatric and mental status examination revealed that Martha H.'s mood was euthymic, and her affect was full range. Filing 13-1 at 67 (AR 340). The examination results state that her speech, associations, attention, and thought processes were all normal. Filing 13-1 at 67 (AR 340). Martha H. displayed no signs of any thought disorders, hallucinations, or suicidal ideation. Filing 13-1 at 67 (AR 340). Martha H. was prescribed lamotrigine to manage her bipolar disorder. Filing 13-1 at 67 (AR 340). Martha H. returned to Christine Karell, APRN, on April 1, 2019. Filing 13-1 at 70-71 (AR 343-44). The results of Martha H.'s psychiatric and mental status examinations were consistent with the results from the February 2019 visit. Filing 13-1 at 70 (AR 343). Martha H.'s lamotrigine dose was increased to one-hundred milligrams per day. Filing 13-1 at 70 (AR 343).

Martha H. visited Sherri Shaw, APRN, at Community Action Partnership of Western Nebraska (CAPWN) Health Center on August 8, 2019, for a medication management visit. Filing 13-2 at 24-32 (AR 371-79). Martha H. was irritated that her psychologist had diagnosed her with "mild" bipolar disorder, stating that her attorney said she would not qualify for Social Security income with a diagnosis of "mild." Filing 13-2 at 24 (AR 371). Martha H. stated that she was more depressed and "always suicidal," but that she had no specific suicidal plan at that time. Filing 13-2 at 25 (AR 372). After persistent coaxing by Shaw, Martha H. made a suicide prevention plan and committed to attending therapy on a regular basis with Lucy Saenz, LMHP. Filing 13-2 at 25, 33-34 (AR 372, 380-81).

During the consultation with Shaw regarding Martha H.'s psychiatric symptoms, Martha H. reported that she was experiencing insomnia and had a hard time being places in which there were many people. Filing 13-2 at 25 (AR 372). She further reported that she was experiencing a decrease in appetite and had been hearing a voice in her head telling her to distrust and stay away

5

from other people. Filing 13-2 at 26 (AR 373). Shaw diagnosed Martha H. with moderate bipolar 1 disorder, chronic insomnia, PTSD,[2] and borderline personality disorder. Filing 13-2 at 29-30 (AR 376-77). At the conclusion of the visit, Shaw prescribed Abilify and Hydroxyzine, in addition to the regular therapy sessions. Filing 13-2 at 31 (AR 378).

Martha H. attended a therapy session at CAPWN Health Center on August 12, 2019, with Maria L (Lucy) Saenz, LMHP. Filing 13-2 at 17 (AR 364). Martha H. reported that she was feeling overwhelmed by the responsibilities of being a single mother, although her son was practically taking care of her. Filing 13-2 at 17 (AR 364). She further stated that she was drinking daily, but when asked by Saenz if she would attend a substance abuse program, Martha H. refused. Filing 13-2 at 17 (AR 364). Saenz noted that Martha H. is reluctant to attend the therapy session recommended by Sherri Shaw, APRN, and recommended a diagnosis of major depression based on Martha H.'s answers on a patient symptoms report. Filing 13-2 at 18-20 (AR 365-67). Martha H.'s treatment plan going forward included weekly therapy sessions and medication monitoring. Filing 13-2 at 18 (AR 365).

On August 22, 2019, Martha H. visited the CAPWN Health Center for a medication management visit with Sherri Shaw, APRN. Filing 13-2 at 12-16 (AR 359-63). Martha H. complained of depression and stated that she believed she was "missing something for [her] depression." Filing 13-2 at 12 (AR 359). She stated that the Abilify she had been prescribed at a previous visit was improving her mood and causing her to be less irritable. Filing 13-2 at 12 (AR 359). She reported decreased anxiety after taking Hydroxyzine before bed, another medication prescribed previously. Filing 13-2 at 12 (AR 359). Martha H. also reported increased financial stress that month, and that she stated that the psychologist who diagnosed her with mild bipolar

---

[2] The administrative record does not definitively identify the source of Martha H.'s PTSD.

disorder was incorrect because she believes her bipolar disorder is more moderate. Filing 13-2 at 12 (AR 359). Martha H. also reported suicidal ideation during this visit. Filing 13-2 at 16 (AR 363).

Shaw's psychiatric review of Martha H.'s symptoms revealed that Martha H. was displaying signs of anxiety such as sleep disturbance and excessive worrying, signs of depression including decreased energy levels and self-esteem, and signs of PTSD. Filing 13-2 at 14 (AR 361). There is conflicting information in the medical record pertaining to whether Martha H. was experiencing hallucinations. Filing 13-2 at 12-15 (AR 359-62). Martha H. reported hearing a voice in her head but denied hearing voices others do not. Filing 13-2 at 12-13 (AR 359-60). In her psychiatric review of Martha H.'s symptoms, Shaw noted that Martha H. denied hearing voices but noted during the same visit in the mental status assessment that Martha H. was experiencing hallucinations. Filing 13-2 at 14-15 (AR 361-62).

Martha H. returned to CAPWN Health Center on October 23, 2019, for a therapy session with Maria L Saenz, LMHP. Filing 13-4 at 20-25 (AR 560-65). This visit was Martha H.'s first therapy session since her previous session with Saenz in August. Filing 13-4 at 24 (AR 564). Martha H. presented with an anxious mood and affect but reported that she felt "OK." Filing 13-4 at 20-21 (AR 560-61). Martha H. willingly engaged with Saenz in discussing her emotions and asked Saenz if she could meditate again in the following week's therapy session because she felt emotionally stable while meditating during the visit. Filing 13-4 at 20-21 (AR 560-61). Martha H. reported hallucinations upon presentation at the therapy session but indicated that the hallucinations stopped for some time while she was meditating during the session. Filing 13-4 at 21 (AR 561). Martha H. recommitted to regular therapy sessions and planned to continue taking her medications. Filing 13-4 at 25 (AR 565).

On November 18, 2019, Martha H. attended a therapy session with Maria L. Saenz, LMHP. Filing 13-4 at 11-19 (AR 551-59). Martha H. reported a slight reduction in her anxiety through attending her appointments. Filing 13-4 at 14 (AR 554). She reported improvement in her ability to talk with her neighbors. Filing 13-4 at 14 (AR 554). Martha H. reported that she felt frustrated with the Social Security process and that the frustration elevated her anxiety. Filing 13-4 at 13-14 (AR 553-54). Martha H. committed to accepting responsibility for changing her behavior. Filing 13-4 at 12 (AR 552). She reported that she felt sad and depressed but that she was not experiencing any suicidal ideation. Filing 13-4 at 13, 15 (AR 553, 555). Saenz noted that Martha H.'s current problems include alcohol dependance, cannabis use, borderline personality disorder, PTSD, insomnia, bipolar disorder, depression, and anxiety. Filing 13-4 at 16 (AR 556). Martha H.'s medication regimen consisted of Aripiprazole, Abilify, and Hydroxyzine. Filing 13-4 at 16 (AR 556).

On December 20, 2019, Martha H. returned to CAPWN for a therapy session with Maria Saenz, LMHP. Filing 13-4 at 4-8 (AR 544-48). Saenz's assessment of Martha H. revealed that Martha H.'s bipolar disorder, major depressive disorder, and anxiety disorder had improved. Filing 13-4 at 6 (AR 546). Martha H. reported that she had been using a breathing exercise to calm her down. Filing 13-4 at 5 (AR 545). She reported that she was experiencing a reduction in anxiety-related symptoms since she had resumed her medication and began sleeping better. Filing 13-4 at 5 (AR 545). Martha H. denied having deep depression. Filing 13-4 at 5 (AR 545). She reported hallucinations but stated that she understood these voices were only in her mind and that she ignores them. Filing 13-4 at 5, 7 (AR 545, 547). She conveyed her interest in changing her current lifestyle through therapy and keeping up with her medication regimen. Filing 13-4 at 5 (AR 545).

During this therapy session, Martha H. reported that she had admitted herself to the local hospital, Regional West Medical Center, on December 15, 2019, after being transported there by the police. Filing 13-4 at 7 (AR 547), 13-5 at 2-39 (AR 574-681). Martha H. had called the police for help during an anxiety attack that made her suicidal, which was precipitated by not having medication to take. Filing 13-4 at 7 (AR 547). She was provided new medications and her current prescriptions were updated. Filing 13-4 at 7 (AR 547). Martha H. reported feeling emotionally and physically better after resuming medication. Filing 13-4 at 7 (AR 547). She also reported that she had been using coping strategies that were beneficial in managing her symptoms. Filing 13-4 at 7 (AR 547).

b.   Self and Lay Assessments of Martha H.'s Functionality

On September 17, 2019, Martha H. completed a function report for use by the Social Security Administration in considering her request for benefits. Filing 12-7 at 30-37 (AR 232-39). In this report, Martha H. indicated that she has difficulty reading and writing, and that she is emotional—she cries and is angered easily. Filing 12-7 at 30 (AR 232). Martha H. reported that she helps her son with his money, drives him around, and cares for her and her son's cats. Filing 12-7 at 31 (AR 233). She reported that she prepares her own meals daily, cleans and does laundry all day three days a week, and that she grooms herself. Filing 12-7 at 32 (AR 234). She reported her ability to accomplish these things by herself. Filing 12-7 at 32 (AR 234). Martha H. indicated in the report that she and her son go grocery shopping twice a week. Filing 12-7 at 33 (AR 235).

In this same report, Martha H. states that she has a difficult time being around other people due to her psychiatric illnesses. Filing 12-7 at 31, 34-35 (AR 233, 236-37). She reported that her illnesses affect her ability to remember, talk, complete tasks, concentrate, understand, and follow

instructions. Filing 12-7 at 35 (AR 237). She also stated that she has a hard time with authority figures and managing stress. Filing 12-7 at 35 (AR 237).

On September 16, 2019, Lonnie Lane, a friend of Martha H., completed a similar function report for Martha H.'s claim for disability benefits. Filing 12-7 at 22-29 (AR 224-31). At the time this report was completed, Ms. Lane had known Martha H. for three years. Filing 12-7 at 22 (AR 224). Ms. Lane spent approximately three to four hours per day with Martha H. Filing 12-7 at 22 (AR 224). She reported that Martha H. cared for her son's cats and had no problem taking care of her own personal needs. Filing 12-7 at 23 (AR 225). Ms. Lane also indicated that Martha H. prepared all her own meals on a daily basis and that she completed tasks such as laundry and cleaning in a normal amount of time. Filing 12-7 at 24 (AR 226). Ms. Lane's report indicates that Martha H. could pay bills, count change, handle a savings account, and use a checkbook and money orders. Filing 12-7 at 25 (AR 227). Ms. Lane included that Martha H. goes outside daily and has the ability to go out alone. Filing 12-7 at 25 (AR 227). Martha H. grocery shopped, visited the YMCA, and did arts and crafts with Ms. Lane's four-year-old grandson a few times per week. Filing 12-7 at 25-26 (AR 227-28).

Ms. Lane indicated that Martha H.'s illnesses cause her to become depressed and lack the motivation to get things done. Filing 12-7 at 27 (AR 229). Ms. Lane stated that Martha H. needs help understanding written instructions, but that she could follow spoken instructions well. Filing 12-7 at 27 (AR 229). Ms. Lane's report states that Martha H. has a difficult time handling stress but that she has a fair ability to handle changes in routine and finishes what she starts. Filing 12-7 at 27-28 (AR 229-30).

c.   Evaluations of Martha H.'s Medical History by State Consultants

On December 1, 2019, Glenda Cottam, PhD, a state psychologist consultant, concluded Martha H.'s symptoms and history do not exactly meet or equal any mental health listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. Filing 12-3 at 33 (AR 88). Dr. Cottam concluded that Martha H. is able to handle some short or simple instructions and would need accommodations at a work site, such as additional time to complete assigned tasks, but that she would be capable of functioning in a work environment that would provide such accommodations. Filing 12-3 at 33 (AR 88). Dr. Cottam also noted that Martha H. would function best in a setting where there is little need for direct supervision or frequent interaction with others. Filing 12-3 at 34 (AR 89). Although Martha H. reported in other mental health visits that she is not comfortable with change, Dr. Cottam noted that she is able to adapt to changes that are predictable and gradual. Filing 12-3 at 34 (AR 89). According to Dr. Cottam's report, Martha H. has moderate limitations under 20 C.F.R. Part 404, Subpart P, Appendix 1 in understanding, remembering, and applying information, interacting with others, concentrating, persisting, and adapting or managing oneself. Filing 12-3 at 34 (AR 89).

On February 18, 2020, Rebecca Braymen, PhD, a state psychologist, evaluated Martha H.'s medical and non-medical evidence. In her evaluation of the medical history, Braymen concluded that Martha H.'s statements regarding the intensity, persistence, and functionally limiting effects of the symptoms are not substantiated by Martha H.'s medical record alone. Filing 12-3 at 54 (AR 109). Further, Braymen opined that Martha H.'s statements regarding her symptoms were only partially consistent with the total medical and non-medical evidence. Filing 12-3 at 54 (AR 109). Braymen concluded her symptoms evaluation by stating that Martha H.'s alleged limitations are more severe than objective findings support. Filing 12-3 at 54 (AR 109).

11

Braymen concluded that Martha H. has moderate limitations under 20 C.F.R. Part 404, Subpart P, Appendix 1, in understanding, remembering, and applying information, interacting with others, concentrating, persisting, and adapting or managing oneself. Filing 12-3 at 53 (AR 108). Braymen indicated that Martha H.'s limitations in understanding and remembering affect her ability to work with detailed instructions. Filing 12-3 at 55 (AR 110). Braymen concluded that Martha H. would do best with simple tasks. Filing 12-3 at 55 (AR 110). Braymen's report indicates that due to her moderate limitations in concentrating and persisting, Martha H. would do best in a routine setting. Filing 12-3 at 55 (AR 110). Braymen also concluded that Martha H. does not have any adaptation limitations. Filing 12-3 at 56 (AR 111).

d. Martha H.'s Personal Testimony at the ALJ Hearing

The ALJ held a hearing on February 1, 2021. Filing 12-2 at 30-57 (AR 29-56). Martha H. appeared in person and chose not to be represented by counsel at the hearing. Filing 12-2 at 33 (AR 32). Martha H. testified that she has not engaged in work for pay since she was working for a hospital in 2015. Filing 12-2 at 34 (AR 33). Martha H. engaged in housekeeping work for clients of the hospital's aging office. Filing 12-2 at 34-35 (AR 33-34). Martha H. testified that she had engaged in similar work for another hospital, Regional West Medical Center, cleaning rooms and restrooms, changing bed sheets, and so forth. Filing 12-2 at 36-37 (AR 35-36). Martha H. testified that she has not sought employment since 2015 because the job applications are "online now and for me that is really difficult to read and understand." Filing 12-2 at 37 (AR 36). Martha H. further explained that she could not engage in work she had previously done, such as driving for a crew car company, or potentially working as a dispatcher of those crew car drivers, because she has difficulty putting up with people and reading. Filing 12-2 at 37-38 (AR 36-37).

Martha H. testified that she lives with her adult son, who is her emotional support. Filing 12-2 at 40 (AR 39). Martha H. goes grocery shopping with her son because having him around helps her to handle her anxiety. Filing 12-2 at 40 (AR 39). Martha H. testified that she would probably be able to handle her anxiety without her son for a month and a half if he were not around. Filing 12-2 at 40-41 (AR 39-40). Martha H. testified that the morning of the hearing, when she was grocery shopping with her son, she had an anxiety attack that caused her to remove herself to the car while her son finished shopping. Filing 12-2 at 41 (AR 40). Martha H. spends a couple of hours each day engaged in activities that help manage her anxiety, such as art projects and housework. Filing 12-2 at 42 (AR 41). She testified that she is able to do her own housework but cannot perform her housework if she is being supervised or anyone else is present. Filing 12-2 at 42-43 (AR 41-42). Despite this, Martha H. denied her ability to be able to do housework in someone else's home as a job, even when that person is not home. Filing 12-2 at 43 (AR 42). Martha H. testified that she had spent time caring for a downstairs neighbor's dogs. Filing 12-2 at 45 (AR 44). When asked by the ALJ if she could perform a job such as caring for someone's pets while they are out of town, Martha H. responded, "If I could find one like that around here, that would be great, but I don't have a car at the moment." Filing 12-2 at 45-46 (AR 44-45).

Martha H. testified regarding physical symptoms she had been experiencing. Filing 12-2 at 46-47 (AR 45-46). She testified that she has acid reflux and that she was told by a doctor not to lift anything over fifteen pounds to avoid aggravating her heartburn. Filing 12-2 at 46-47 (AR 45-46). She further stated that she had to take a medication daily for a heart murmur. Filing 12-2 at 47 (AR 46). Martha H. mentioned that she was supposed to have a mammogram performed, and that she could not know how that would affect her ability to work until she received results from the test. Filing 12-2 at 47-48 (AR 46-47).

*3. The ALJ's Impairment Findings*

An ALJ engages in a five-step analysis to determine whether a claimant is disabled.

*Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (citing *Perks v. Astrue*, 687 F.3d 1086, 1091

(8th Cir. 2012)).

> During the five-step process, the ALJ considers (1) whether the claimant is
> gainfully employed, (2) whether the claimant has a severe impairment, (3)
> whether the impairment meets the criteria of any Social Security Income
> listings, (4) whether the impairment prevents the claimant from performing past
> relevant work, and (5) whether the impairment necessarily prevents the
> claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d

584, 590 (8th Cir. 2004)). The ALJ must continue the analysis unless the claimant is found not to

be disabled at steps one, two, four or five, or is found to be disabled at steps three or five. *See* 20

C.F.R. § 404.1520(a).

At step one, the ALJ will find the claimant not to be disabled if he or she is engaged in

substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity is work

activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work is defined as

"work activity that involves doing significant physical or mental activities." 20 C.F.R.

§ 404.1572(a). Gainful activity is defined as "work activity that you do for pay or profit." 20 C.F.R.

§ 404.1572(b). In this case, the ALJ determined Martha H. had not engaged in substantial gainful

activity since November 28, 2018, which was the day following the previous ALJ's unfavorable

decision. Filing 12-2 at 15 (AR 14).

At step two, the ALJ will determine if the claimant has a severe impairment or a

combination of severe impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if

it limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). The ALJ

14

in this case determined that Martha H. had the following severe impairments: depressive disorder, anxiety or trauma disorder, and personality disorder. Filing 12-2 at 15 (AR 14).

At step three, the ALJ then must determine whether the impairments meet the criteria set forth in a list of impairments provided by the Social Security Administration. *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § Pt. 404, Subpt. P, App. 1. If the claimant's severe impairments meet or medically equal one of the listed impairments, then the ALJ must find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the ALJ will proceed to the next step. *Id.* In this case, the ALJ found that Martha H. did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the listed impairments. Filing 12-2 at 16-17 (AR 15-16).

### 4. The ALJ's RFC Findings

At step four, the ALJ must determine the claimant's residual functional capacity (RFC) and assess the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is the extent to which a claimant can engage in physical and work activities despite the claimant's limitations. 20 C.F.R. § 404.1545(a). "A disability claimant has the burden to establish her RFC." *Eichelberger*, 390 F.3d at 591 (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)). "The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Id.* In this case, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to understand, remember, and persist at a consistent pace while performing tasks that are simple, straightforward, and uncomplicated. She is able to exercise proper judgment in performing those tasks and to respond appropriately to at least routine changes in the workplace and to routine supervision. She is able to respond and behave appropriately without distracting others when performing tasks that do

not require more than incidental and superficial interaction with coworkers or the public. The claimant is able to perform work in which the essential job tasks do not require reading.

Filing 12-2 at 18 (AR 17).

Considering the claimant's RFC, the ALJ will then determine if the claimant is still able to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); *see* 20 C.F.R. § 404.1560(b). "Past relevant work" is work performed by the claimant within the last fifteen years or fifteen years prior to the date that disability must be established. *See* 20 C.F.R. § 404.1565(a); 20 C.F.R. § 416.965(a). If the claimant is able to perform past relevant work, the ALJ will find the claimant to be not disabled. *Id.* In this case, the ALJ determined that Martha H. is unable to perform any past relevant work. Filing 12-2 at 23 (AR 22).

### 5. *The ALJ's Findings Regarding Ability to Do Other Work*

At step five, if the ALJ determines the claimant is not able to do past relevant work, the burden of proof shifts to the ALJ to show the claimant "retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790 (quoting *Eichelberger*, 390 F.3d at 590). However, the burden of proof remains with the claimant to prove her disability and her RFC. *Id.* (quoting *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2001)). If it is not shown that a significant number of jobs exist, the ALJ must find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ may have a vocational expert (VE) testify at the administrative hearing. 20 C.F.R. § 404.1566(e). The role of the VE is "to take into account medical limitations, including opinions as to work time limits, and offer an opinion on the ultimate question whether a claimant is capable of gainful employment." *Swedberg v. Saul*, 991 F.3d 902, 905 (8th Cir. 2021) (quoting *Smallwood v. Chater*, 65 F.3d 87, 89 (8th Cir. 1995)).

16

In the case at hand, Theresa Wolford, a VE, testified at the hearing to help the ALJ determine if sufficient work exists in the national economy that Martha H. could perform. Filing 12-2 at 48-57 (AR 47-56). First, the ALJ asked the VE if work would exist for a hypothetical person of Martha H.'s age, education, and past work experience who has no exertional limits but can only perform simple, straightforward, and uncomplicated tasks, and who could appropriately respond to routine changes in workplace and supervision but can only stand "incidental [or] superficial interaction with coworkers or the public." Filing 12-2 at 49 (AR 48). In response, the VE provided three jobs: "cleaner hospital" (323.687-010)[3]; "laundry worker" (361.684-014), 204,820 available jobs; and "linen room attendant" (222.387-030), 213,239 available jobs. Filing 12-2 at 37, 49-50 (AR 36, 48-49).

The ALJ then asked a second hypothetical with the same set of nonexertional limitations but limited the exertional level of the hypothetical person to light work. Filing 12-2 at 50 (AR 49). The VE testified that an individual in these hypothetical circumstances would be able to perform "cleaner housekeeping" (323.687-014), with 371,376 available jobs; "folding machine operator" (208.685-014), with 119,960 available jobs; or "mail clerk" (209.687-026), with 69,822 available jobs. Filing 12-2 at 50 (AR 49).

The ALJ then asked a third hypothetical, this time including the limitation that the hypothetical individual could not perform jobs in which the central tasks require reading. Filing 12-2 at 50-51 (AR 49-50). The VE testified that the cleaner housekeeper job would remain, and the hypothetical individual could also perform "garment sorter" (222.687-014), with 127,194 available jobs, or "assembler production" (706.687-010), with 229,240 available jobs. Filing 12-2

---

[3] The Social Security Administration primarily relies on the *Dictionary of Occupational Titles* (DOT) for gathering information about occupations in the national economy. Every occupational title in the DOT has a corresponding nine-digit identification number. *How to Find an Occupational Title and Code*, Information Technology Associates (Apr. 11, 2020), https://occupationalinfo.org/front_580.html.

at 51 (AR 50). At the request of Martha H., the ALJ then asked the VE one final hypothetical. Filing 12-2 at 51-52 (AR 50-51). The ALJ asked the VE how the job prospects would be affected if the hypothetical individual described above could not complete the workday one day a week because the individual became overwhelmed. Filing 12-2 at 52 (AR 51). Based upon her experience, the VE testified that an individual in those circumstances would not be able to maintain competitive employment. Filing 12-2 at 52 (AR 51).

Considering Martha H.'s age, education, work experience, and RFC, the ALJ determined that Martha H. could make a successful adjustment to other work that exists in significant numbers in the national economy. Consequently, the ALJ found that Martha H. was "not disabled" at step five. Filing 12-2 at 24 (AR 23).

## II.  LEGAL ANALYSIS

### A.  Standard of Review

The Court reviews a denial of benefits by the Commissioner *de novo* to determine whether the denial is supported by substantial evidence from the entire record. *Swarthout v. Kijakazi*, 35 F.4th 608 (8th Cir. 2022) (quoting *Julin v. Colvin*, 826 F.3d 1082,1086 (8th Cir. 2016)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). The Court must consider evidence that "both supports and detracts from the ALJ's decision" and will not reverse an administrative decision solely because "some evidence may support the opposite conclusion." *Fentress v. Berryhill*, 854 F.3d 1016, 1019–20 (8th Cir. 2017). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Dols v. Saul*,

931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)). The Court should not reverse merely because the Court would have decided differently. *Id.* (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). The Court should also defer to the ALJ's credibility determinations as long as they are supported by good reasons and substantial evidence. *Despain*, 926 F.3d at 1028.

Additionally, the Court must determine whether the ALJ's decision "complies with the relevant legal standards." *Lucas v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (quoting *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)) (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003) and *Nettles v. Schweiker*, 714 F.2d 833, 836 (8th Cir. 1983)). The Court must view the record in the light most favorable to the ALJ's determination. *Dols*, 931 F.3d at 748 (quoting *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam)).

## B. Discussion

As mentioned above in the factual background, Martha H. raises three arguments based on the record for vacating the ALJ's decision to deny her disability benefits. First, Martha H. asserts that the ALJ engaged in the "cherry picking" of facts from the record in order to make Martha H.'s disability seem less serious than it may be. Filing 25 at 12. Second, Martha H. contends that the ALJ failed to adequately develop the record and erroneously relied on his own understanding of the phrase "functioning on a sustained basis." Filing 25 at 21. Lastly, Martha H. argues that the ALJ erroneously relied upon a VE's response to a hypothetical question that did not encompass all of Martha H.'s limitations. Filing 25 at 22-24.

*1. The ALJ's Reliance on the Record*

Martha H. first asserts that the ALJ improperly "cherry picked" facts from the record to support his finding that Martha H. is not disabled. Filing 25 at 12. In other words, Martha H. contends that there is no substantial evidence in the record to support the ALJ's finding of no disability. Filing 25 at 9. In fact, Martha H. states that the appeals council erred in affirming the ALJ's unfavorable decision because there is substantial evidence in the record to support a finding that Martha H. is disabled. Filing 25 at 9. However, this statement misstates the legal standard for disability findings. Here, the Plaintiff's brief seems to suggest that the ALJ's decision in affirming the Commissioner's unfavorable decision should be reversed because there is "substantial evidence support[ing] a finding of disability." Filing 25 at 9. However, substantial evidence supporting a finding of disability alone is not enough to justify reversing an unfavorable finding also supported by substantial evidence. *See Dols* 931 F.3d at 744. This Court must view the record in the light most favorable to the ALJ's determination, *id.* at 748, and should also defer to the ALJ's credibility determinations as long as they are supported by substantial evidence, *Despain,* 926 F.3d at 1028.

An ALJ engages in cherry-picking when he focuses on "facts that support a finding of nondisability while ignoring evidence that points to a disability finding," which violates the ALJ's duty to "consider all relevant medical evidence" in making a determination. *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 362 (4th Cir. 2023) (quoting *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017)); *see Gerstner v. Berryhill*, 879 F.3d 257 (7th Cir. 2018) (ALJ cherry-picked when he fixated on portions of treating physician's notes while ignoring physician's diagnoses in same notes). However, "an ALJ need not mention every piece of evidence, so long he [sic] builds a logical bridge from the evidence to his conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th

Cir. 2010). In *Bakke v. Kijakazi*, the Seventh Circuit Court of Appeals determined that an ALJ's unfavorable decision was not a product of cherry-picking when the ALJ considered that Bakke had abnormal scans and exams and increases in subjective pain, but that the other medical evidence reflected normal scans and pain that was manageable. 62 F.4th 1061, 1068 (7th Cir. 2023). This type of evidence weighing is the prerogative of the ALJ, and a reviewing court will not reweigh the evidence, "even where reasonable minds might disagree about the outcome." *Id.*

Martha H. attacks the ALJ's findings under 20 C.F.R. § 404.1520(a)(4)(iii) as being against the weight of the evidence in the record. Filing 25 at 12-21. After considering Martha H.'s medical record and testimony at the hearing, the ALJ determined that Martha H. does not have an impairment that meets or medically equals the severity of one of those listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Filing 12-2 at 16-17 (AR 15-16). In doing so, the ALJ considered whether Martha H.'s mental impairments satisfied the paragraph B criteria of 12.05, which require that the claimant's mental impairments result in one extreme limitation or two marked limitations in a broad area of functioning. Filing 12-2 at 16 (AR 15); 20 C.F.R. § 404, Subpart P, Appendix 1. An extreme limitation is the inability to function independently, appropriately, or effectively on a sustained basis. Filing 12-2 at 16 (AR 15). A marked limitation means a seriously limited ability to function independently, appropriately, or effectively on a sustained basis. Filing 12-2 at 16 (AR 15). The ALJ determined that Martha H. was only moderately limited in four functional areas under paragraph B. Filing 12-2 at 16-17 (AR 15-16). Martha H. contests the ALJ's determinations in each one of these areas on the basis that there was not substantial evidence in the record to support the ALJ's determinations. Filing 25 at 12-21. The Court disagrees with Martha H.'s assessment of the ALJ's determinations and holds that the ALJ's decision is founded upon substantial evidence in the record. *See Dols* 931 F.3d at 744, 48; *Despain*, 926 F.3d at 1028.

The ALJ's finding that Martha H. is moderately limited in the first area of functioning—understanding, remembering, or applying information—is sufficiently supported by evidence from the record. Based on evidence and testimony, the ALJ concluded that Martha H. has "a fair ability to function independently, appropriately, effectively, and on a sustained basis, with learning, recalling, and using information to perform work activities." Filing 12-2 at 17 (AR 16). Martha H. suggests that the ALJ minimized her difficulties in these areas in making this finding. Filing 25 at 14. She continues by listing several facts in her brief that tend to support the ALJ's finding in this functional area instead of refute it. Filing 25 at 14. Martha H. notes that the ALJ took notice of the established fact that Martha H. is able to drive and help her son with money; she takes care of her cats and her own personal needs; she cooks her own meals, performs her household chores, grocery shops, and occupies herself with watching television, playing card games, and doing puzzles. Filing 25 at 14. Martha H. asserts that the medical records and her testimony at the hearing both suggest that she is not capable of independent functioning. Filing 25 at 15. However, her brief provides no citations to the medical record or evidence (aside from citations to the hearing testimony) to support this assertion at all. Her brief makes the bold assertion that Martha H. "is dependent upon her son for virtually everything," but provides no corroborating reference to the record. Filing 25 at 15. To the contrary, the record supports the ALJ's finding that Martha H. is only moderately limited in this functional area. While, due to her anxiety, she has her son accompany her when she goes grocery shopping, Filing 25 at 40-41, the record indicates that Martha H. takes care of her son and their cats, prepares her own meals daily, does her own laundry and cleaning multiple times a week, and manages her and her son's finances. Filing 12-7 at 23-25, 31-33 (AR 225-27, 233-35). In making his determination, the ALJ considered the fact that Martha H. has some memory issues, but that the evidence supports that she is capable of handling

household chores and daily activity. Filing 12-2 at 17 (AR 16). The ALJ considered "all relevant medical evidence" in making his determination and did not simply ignore evidence that points to a disability finding. *Shelley C.*, 61 F.4th at 362. These facts present sufficient evidence to support the conclusion that Martha H. can function independently, appropriately, effectively, and on a sustained basis in understanding, remembering, and applying information.

The ALJ's finding that Martha H. is moderately limited in the second area of functioning—interacting with others—is sufficiently supported by the administrative record. Martha H. asserts that the ALJ both misstated and underestimated the evidence regarding her limitation in this area of functioning. Filing 25 at 16. The record indicates that Martha H. frequents the YMCA[4] a few times a week, would spend time with a neighbor and her grandson multiple times a week for multiple hours, and grocery shops a couple of times a week. Filing 12-7 at 22, 25-26, 33 (AR 224, 227-28, 235). Martha H. states that these activities represent short and infrequent interactions with other people, and therefore, cannot be sufficient to show Martha H. could interact with people for the length of a workday. Filing 25 at 16. These statements reveal that the Plaintiff has mischaracterized, or misunderstood, two crucial things in this matter: the record and the ALJ's finding with regard to this functional area in particular. First, the record indicates, as cited above, that Martha H. is capable of spending multiple hours a day with other people. Filing 12-7 at 25-26 (AR 227-28). Second, the purpose of this phase of the ALJ's analysis was not to determine whether Martha H. could interact with others for an entire workday. Rather, the objective was to determine Martha H.'s capacity to interact with others, which he determined to be moderately limited. Filing 12-2 at 17 (AR 16). The ALJ has built a "logical bridge" from the evidence in the record to the finding that Martha H. is moderately limited in this area of functioning. *See Denton*, 596 F.3d at

---

[4] The administrative record does not indicate exactly what Martha H. does at the YMCA.

425. "An ALJ need not mention every piece of evidence, so long he [sic] builds a logical bridge from the evidence to his conclusion." *Id.* While evidence may exist in the record to support a determination that Martha H.'s limitation in the area of interacting with others is marked, there is sufficient evidence to support the ALJ's determination that her ability to interact with others is only moderately limited. *See Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019).

Martha H. next challenges the ALJ's finding of a moderate limitation in the third functional area of concentrating, persisting, or maintaining pace. Filing 25 at 17. The ALJ supports this finding by noting that Martha H. can focus well enough to drive, play cards, and do puzzles. Filing 12-2 at 17 (AR 16). The ALJ concludes that there is no indication in the record that Martha H. could not perform tasks that she knows how to perform. Filing 12-2 at 17 (AR16). Martha H. asserts that the ALJ's stated bases for making this determination are "woefully inadequate." Filing 25 at 17. However, the record as a whole indicates that Martha H. is indeed capable of initiating and performing tasks that she knows how to do. In addition to the ALJ's stated bases for the moderate limitation finding, the record also indicates that Martha H. can cook, engage in routine household activities such as cleaning and doing laundry, care for her and her son's pets, and do arts and crafts. Filing 12-2 at 20; 12-7 at 23-24, 26, 31-32 (AR 19, 225-26, 228, 233-34). In making his determination, the ALJ also considered Martha H.'s self-reported concentration issues. Filing 12-2 at 17 (AR 16). Just like the ALJ in *Bakke*, the ALJ in this case weighed the evidence and determined that a finding of moderately limited was appropriate. *See Bakke*, 62 F.4th at 1068. This Court will not reweigh the evidence, as that is the prerogative of the ALJ. *See id.* The ALJ's limitation finding of moderate in the functional area of concentrating, persisting, or maintaining pace is adequately supported by evidence in the record. *See Dols* 931 F.3d at 744, 48.

Finally, Martha H. contests the ALJ's finding in the fourth functional area of adapting or managing oneself. Filing 25 at 18. The ALJ determined that Martha H. is moderately limited in this area and has a fair ability to regulate her emotions, control her behavior, and maintain well-being in a work setting. Filing 12-2 at 17 (AR 16). The ALJ makes this determination on the evidence that Martha H. is able to care for her own personal needs and help her son manage his money. Filing 12-2 at 17 (AR 16). Martha H. asserts that these bases are unpersuasive because they are unrelated to regulating emotions and controlling behavior. Filing 25 at 19. Martha H. then argues that the record shows she is incapable of both regulating her emotions and controlling her behavior. Filing 25 at 19. Her brief states that she suffers from bipolar disorder and PTSD and provides ambiguous citations to only two parts of the record, "R52, 349." Filing 25 at 19. The government's brief reiterates the ALJ's bases in support of this determination and provides an ambiguous reference and citation to the function reports completed by Martha H. and her friend, Lonnie Lane, in further support of the ALJ's determination. Filing 28 at 11. The Court finds the briefing of both parties inadequate on this point. Minimal citations to the record are unpersuasive and tend to indicate a dearth of evidence supporting the position.

Notwithstanding the parties' failure to identify it, there is substantial evidence in the record to support the ALJ's determination that Martha H. is moderately limited in adapting or managing herself.[5] The ALJ builds a logical bridge between Martha H.'s ability to care for her personal needs and help her son with his finances to the ability to "set realistic goals or make plans independently

---

[5] Additionally, through attending medication management and psychotherapy appointments, Martha H. has been able to improve her ability and increase her self-confidence in dealing with others. Filing 13-4 at 18 (AR 558). She reported reduced anxiety related symptoms due to therapy, as well as improvements in her ability to manage her anger and frustration. Filing 13-4 at 18 (AR 558). Martha H. reported that she had begun using coping strategies that were working well to help her manage her anxiety. Filing 13-4 at 7 (AR 547). This evidence, in addition to the bases provided by the ALJ as support, bolster the determination that Martha H. is moderately impaired in adapting or managing herself.

of others." *See Denton*, 596 F.3d at 425. Filing 12-2 at 17 (AR 16). Consequently, he need not mention every piece of evidence in his explanation. *Id.* The ALJ adequately supports the finding that Martha H. is moderately impaired in adapting or managing herself.

The record contains substantial evidence in support of the ALJ's determinations that Martha H. is moderately limited in the four functional areas discussed above. With deference to the ALJ's decision, this Court affirms his findings in this regard. *See Dols* 931 F.3d at 744, 48; *Despain*, 926 F.3d at 1028.

### 2. The ALJ Fully and Fairly Developed the Record

Martha H. next argues that the ALJ erred by not fully and fairly developing the record. Filing 25 at 21. She argues the ALJ erred specifically in "relying on his own inferences as to the relevance of the phrase, 'functioning on a sustained basis.'" Filing 25 at 21. The Commissioner responds that the record before the ALJ—which included Martha H.'s treatment record, state agency medical opinions, Martha H.'s psychological issues record, and Martha H.'s own testimony—was sufficient evidence for the ALJ to make an informed decision about the limiting effects of Martha H.'s impairments. Filing 28 at 16-17. The Commissioner argues that the Plaintiff's actual problem is that the record does not support a favorable disability decision, not that the ALJ relied on insufficient evidence in making his determinations. Filing 28 at 17. The Court agrees with the Commissioner.

ALJs have a duty to fully and fairly develop the record. *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant. *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (citing *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)). If the evidence in the record is consistent and sufficient for the ALJ to determine whether

26

a claimant is disabled, the ALJ will make a determination based on that evidence. *See* 20 C.F.R. § 404.1520(a). "While the ALJ has an independent duty to develop the record . . . the ALJ is not required to seek additional clarifying statements from a treating physician unless a crucial issue is underdeveloped." *Grindley*, 9 F.4th at 630 (quoting *Goff*, 421 F.3d at 791). *See Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." (quoting *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994)); *see also Rideout v. Berryhill*, 681 Fed. Appx. 540, 544 (8th Cir. 2017)

Here, Martha H. asserts that the ALJ erred by relying on his own understanding of the relevance of the specific phrase, "functioning on a sustained basis." Filing 25 at 21. Martha H. contests the legitimacy of the finding that she can function in the workplace because the bases for this finding are not relevant. Filing 25 at 21. Martha H. notes that in making this determination, the ALJ considered, among other things, that Martha H. is able to play cards, do puzzles, and interact with healthcare workers. Filing 25 at 21. These bases provide grounds for the conclusion that Martha H. could function in the workplace to some extent. Playing cards and doing puzzles both require, to some extent, the ability to focus and engage in an activity. Martha H.'s ability to interact with her healthcare providers also evinces an ability to function in a workplace where incidental interaction with others would take place. Martha H. has not identified how these bases are irrelevant; her brief has only posited that they are not. Filing 25 at 21. Furthermore, Martha H. has not indicated any evidence supporting a contrary conclusion that she would not be able to function in the workplace. Filing 25 at 21. Indeed, her argument on this issue contains no citations to the record whatsoever. Filing 25 at 21. The burden of persuasion to prove disability remains on

the claimant. *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (citing *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)). Martha H. has not carried that burden on this issue.

The Commissioner asserts that the ALJ relied on sufficient evidence to determine that Martha H.'s impairments were moderate. Filing 28 at 17. The Commissioner continues by stating that just because additional evidence may have been helpful to the decisionmaker does not render additional evidence necessary to decide the issue. Filing 28 at 17. The Court agrees. The evidence in the record was consistent and sufficient for the ALJ to determine Martha H. is not disabled. *See Johnson*, 627 F.3d at 320. "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Id.* (quoting *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994).

### 3. The ALJ's Hypothetical to the Vocational Expert

In her brief to the Court, Martha H. asserts that the ALJ improperly relied on a VE's response to a hypothetical that did not encompass all of Martha H.'s relevant impairments. Filing 25 at 22. At the hearing, the ALJ essentially posited to the VE four separate hypotheticals, all encompassing limitations the ALJ accepted as true based on the record except for the final hypothetical. Filing 12-2 at 48-52 (AR 47-51). Martha H. argues that the ALJ erred because he did not rely on this final hypothetical in making the disability determination. Filing 25 at 23-24. Martha H. cites *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994), in support of the proposition that a VE's response to a hypothetical question that does not encompass all of the plaintiff's relevant impairments cannot constitute substantial evidence for an ALJ's determination. Filing 25 at 23.

The hypothetical on which Martha H. relies here was posited to the VE by the ALJ at the behest of Martha H. herself. Filing 12-2 at 51-52 (AR 50-51). The hypothetical question, as described above in the Background section, was based on Martha H.'s RFC as determined by the

ALJ but included the additional impairment of having "to stop their work . . . for a few hours on at least one day each week." Filing 12-2 at 52 (AR 51). The VE's response was that a person with that RFC and that newly added impairment would not be able to maintain competitive level employment. Filing 12-2 at 52 (AR 51). In essence, Martha H. argues that there is no competitive level employment available for her in the job market based on the VE's response to this hypothetical question and, therefore, the ALJ erroneously determined there was competitive level employment available for her. Filing 25 at 23-24.

In response to Martha H.'s argument, the Commissioner, citing *Heino v. Astrue*, 578 F.3d 873, 882 (8th Cir. 2009), asserts that when positing hypothetical questions to a VE, an ALJ need only include limitations the ALJ has accepted as credible. Filing 28 at 18. In this case, as stated by the Commissioner, the ALJ's first three hypothetical questions mirrored the ALJ's RFC findings, accounted for Martha H.'s ability to perform only light work, and accounted for her inability to read. Filing 12-2 at 48-52 (AR 47-51). The ALJ's RFC findings, as well as the other two limitations included in the hypotheticals, are supported by substantial evidence in the record. Martha H.'s function report indicates that she cannot read, as does her testimony at the hearing. Filing 12-2 at 43; 12-7 at 30-31, (AR 42, 232-33). The limitation posited to the VE by the ALJ at the behest of Martha H. is simply not supported by substantial evidence in the record. Furthermore, Martha H. failed to prove that this additional limitation is credible. The ALJ did not accept it as such. *See Heino*, 578 F.3d at 882 (ALJ did not err in positing hypothetical that did not include claimant's subjective pain allegations because ALJ found them not credible). Affording deference to the ALJ's decision as required by the legal standard of review, *See Despain*, 926 F.3d at 1028, the Court upholds the ALJ's decision not to rely on the fourth hypothetical in making the disability determination.

29

### III. CONCLUSION

The Court concludes that substantial evidence supports the ALJ's decision in Martha H.'s case. Accordingly,

IT IS ORDERED:

1. Martha H.'s Motion for an Order Reversing the Commissioner's Decision, Filing 24, is denied;

2. Kijakazi's Motion for an Order Affirming the Commissioner's Decision, Filing 27, is granted;

3. The Commissioner's decision is affirmed; and

4. The Court will enter a separate judgment.

Dated this 27th day of April, 2023.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge